OPINION
Defendant-appellant, PNC Bank, National Association, appeals a decision of the Mahoning County Common Pleas Court granting partial summary judgment in favor of plaintiff-appellee, Patricia Zeppernick, and denying its cross-motion for summary judgment.
This case arises from a series of loan transactions and corresponding mortgages on property located in Boardman Township, Mahoning County, Ohio. In October 1980 plaintiff-appellee Patricia Zeppernick (Zeppernick) and defendant James L. Jones (Jones) became the joint owners of the subject property. They were not married at the time, but subsequently married on December 24, 1987.
On December 24, 1987, defendant-appellant PNC Bank, National Association (PNC), loaned $60,000 to Bankers Printing Services (BPS), a corporation in which Jones had an interest. The loan was secured by a $60,000 mortgage on the subject property which was recorded with the Mahoning County Recorder's Office on January 12, 1988.
On December 23, 1988, PNC loaned BPS $300,000 in the form of a revolving line of credit. As a condition of making the loan, PNC required that Jones and Zeppernick execute and deliver a Guaranty with power to confess judgment and a $300,000 mortgage on the subject property. PNC was provided the required documents, made the loan, and then recorded the mortgage with the Mahoning County Recorder's Office on January 11, 1989. The terms and conditions of this loan and mortgage were amended three times in the years 1991 to 1992. On each occasion, PNC required execution and delivery of the amendments to the note and mortgage, each of which were duly recorded in the Mahoning County Recorder's Office.
In July of 1992, BPS defaulted under the terms of the 1988 loan by filing for bankruptcy. In a letter dated July 13, 1993, PNC informed Zeppernick and Jones that BPS had failed to meet its obligations under the 1988 loan and demanded immediate repayment of principal and interest due as of July 12, 1993, in the amount of $221,432.76.
On July 16, 1993, Zeppernick filed for a divorce from Jones. That same day, PNC confessed judgment against Jones and Zeppernick in the amount of $221,577.48 in the Court of Common Pleas, Allegheny County, Pennsylvania.
On July 23, 1993, the day after Jones was served with notice of the divorce complaint, Jones executed a quit claim deed of his interest in the subject property to Zeppernick. On August 9, 1993, PNC transferred the Pennsylvania judgment to the Mahoning County Court of Common Pleas for collection.
On November 2, 1993, Zeppernick submitted to PNC an Affidavit of Forgery in which she swore that her signature had been forged on each of the loan documents and subsequent amendments. After reviewing the Affidavit, PNC prepared. and filed a partial release of the Ohio judgment lien, releasing the judgment lien as to Zeppernick only.
On November 4, 1993, Jones filed a petition for a Chapter 7 bankruptcy in the Northern District of Ohio. PNC filed a complaint contesting the dischargeability of Jones' debt to PNC. The Bankruptcy Court entered summary judgment for PNC holding that the debts were not dischargeable and that PNC had no reason to question the bona fides of the loan and mortgage documents or signatures thereon. By the end of 1993 it was clear to all parties that Jones had defrauded PNC by forging Zeppernick's name on the loan documents.
In March 1994 defendant-appellee First Federal Savings Bank of Youngstown (First Federal) loaned $115,000.00 to Zeppernick secured by a mortgage on the subject property.
In 1996 PNC transferred the Alleghney County judgment against Jones and Zeppernick to Illinois in an effort to collect it. On October 25, 1996, Zeppernick filed in the Pennsylvania Court a Petition to Strike the Judgment of Confession previously obtained by PNC against Zeppernick. PNC and Zeppernick negotiated a settlement pursuant to which PNC agreed that its judgment would be stricken only as to Zeppernick and that PNC would file a release of the Ohio judgment lien with respect to her interest in the property.
On July 16, 1997, Zeppernick commenced this action in the Mahoning County Court of Common Pleas seeking to quiet title in her name and to recover damages from PNC and Jones for fraud and conversion. PNC counterclaimed seeking judgment for the amounts due on the notes and a declaration that its mortgage was a valid and existing lien on the subject property. PNC also joined as additional defendants First Federal and the Mahoning County Treasurer so that all liens on the property could be marshaled and PNC's lien foreclosed. First Federal filed a counterclaim seeking a declaration that its mortgage was the first and best lien on the property.
Zeppernick, PNC, and First Federal filed cross-motions for summary judgment. The matter was referred to a magistrate pursuant to Civ.R. 53. On August 31, 1998, the magistrate rendered his decision granting and denying the motions as follows: (1) granting Zeppernick summary judgment on her claim to quiet title in the property free and clear of PNC's mortgage lien; (2) granting PNC's motion and denying Zeppernick's motion with respect to the claim for conversion; (3) granting Zeppernick summary judgment on the issue of liability with respect to her fraud claims; (4) granting First Federal's motion declaring its lien the first and best lien on the property. The magistrate reserved for trial the issue of damages concerning the fraud claim. The magistrate also found that there was no just reason for delay.
PNC filed objections to the magistrate's decision. On December 9, 1998, the trial court overruled those objections and adopted the magistrate's decision as its own. The trial court also found that there was no just reason for delay. This appeal followed.
An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Summary judgment is properly granted when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. Willis Day Warehousing Co.
(1976), 54 Ohio St.2d 64, 66; Civ.R. 56 (C).
 "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56 (C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. * * *" (Emphasis sic.) Dresher v. Burt (1996), 75 Ohio St.3d 280, 293
The "portions of the record" or evidentiary materials listed in Civ.R. 56 (C) include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. The court is obligated to view all the evidentiary material in a light most favorable to the nonmoving party. Templev. Wean United, Inc. (1977), 50 Ohio St.2d 317.
 "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56 (E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Dresher, 75 Ohio St.3d at 293
PNC's first assignment of error is directed towards the trial court's decision to the extent that it granted Zeppernick's motion for partial summary judgment and denied PNC summary judgment on its defenses. PNC sets forth four separate and distinct arguments.
PNC's first argument is that the magistrate's decision reflects a fundamental misunderstanding and misapplication of the law regarding summary judgment. Since PNC's remaining three arguments more specifically attempt to substantiate this general assertion, our resolution of those more specific arguments will necessarily result in a resolution of PNC's first general argument.
PNC's second argument under its first assignment of error is that the trial court erred as a matter of law by rejecting PNC's statute of limitations defense. In its answer and cross-motion for summary judgment, PNC argues that Zeppernick did not bring her fraud claim within the four year statute of limitations.
PNC asserts that it presented evidence from which reasonable minds could have concluded that Zeppernick was aware, or should have been aware, of the alleged wrongdoing more than four years prior to the commencement of this action on July 16, 1997. Specifically, PNC points to an affidavit of Zeppernick's insurance agent. In it, the agent indicated that Zeppernick's insurance carrier mailed annual renewal notices, including declaration pages identifying PNC as a mortgagee of the property, beginning in 1988. PNC also points to a letter dated July 13, 1993 demanding payment from Zeppernick in the amount of $221,431.76 pursuant to a guaranty purportedly executed by Zeppernick on December 23, 1988. PNC argues that reasonable minds could infer from this evidence that Zeppernick was alerted to the possibility of wrongdoing prior to July 16, 1993.
PNC argues that the magistrate failed to construe the evidence most strongly in its favor and instead construed the evidence most strongly in favor of Zeppernick. PNC states that the magistrate chose to accept Zeppernick's self-serving testimony that she received PNC's demand letter on July 16, 1993, the same day that she first consulted a divorce attorney and commenced the divorce action against Jones. PNC argues that this testimony was "undercut" by the affidavit of Zeppernick's divorce attorney who stated that his legal representation of Zeppernick began two or three days prior to the filing of the divorce complaint on July 16, 1993.
Zeppernick argues that the insurance documents were insufficient to put her on notice of any wrongdoing. On March 13, 1989, PNC extended a $35,000.00 home equity loan to Zeppernick and Jones. Zeppernick admits that she participated in the proceeds of this loan and that this was the only transaction she entered into with PNC with her full knowledge and consent. Zeppernick contends that if she did receive insurance documents reflecting a PNC interest, she would have had no reason to believe that PNC was claiming any interest in the property other than the 1987 home equity loan, of which she was already aware.
Zeppernick also argues that PNC's demand letter was insufficient to alert her of the possible existence of fraud. Zeppernick argues that the only evidence on the date this letter was received by her was her own self-serving testimony that she received it on July 16, 1993. Even if she received the letter a day or two after July 13, 1993, Zeppernick contends that she was still entitled to additional time to conduct a minimal investigation into whether a fraud had been perpetrated.
R.C. 2305.09 provides in relevant part:
 "An action for any of the following causes shall be brought within four years after the cause thereof accrued:
"* * *
"(C) For relief on the ground of fraud;
"* * *
 "If the action is for trespassing under ground or injury to mines, or for the wrongful taking of personal property, the causes thereof shall not accrue until the wrongdoer is discovered; nor, if it is for fraud, until the fraud is discovered."
A cause of action for fraud accrues when the fraud is, or should have been, discovered. See Shover v. Cordis Corp. (1991),61 Ohio St.3d 213. Absent actual awareness, the standard to determine when a person should be aware of the fraud is when he or she possesses facts sufficient to alert a reasonable person to the possibility of wrongdoing. Palm Beach Co. v. Dun Bradstreet, Inc. (1995), 106 Ohio App.3d 167, 171. No more than a reasonable opportunity to discover the fraud is required to start the period of limitation. Aluminum Line Products Co. v. BradSmith Roofing Co., Inc. (1996), 109 Ohio App.3d 246, 260. Information sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire into the matter with due diligence. Id.
PNC argues that a genuine issue of material fact exists as to when Zeppernick received PNC's demand letter. At her deposition, Zeppernick testified on this subject as follows:
 "Q Pat, I am going to hand you what has been marked as Defendant's Exhibit No. 2. It is letter dated July 13th, 1993 directed to you. Please look at it. Do you remember receiving that letter?
 "A Yes. The week after this was mailed, like on the 16th or something, I remember the week after all of this other stuff happened this came that first week.
 "Q When you say all this other stuff, a lot of things were happening around that period of time, correct?
"A A lot things starting the 15th of July, yes.
"Q The 15th, is that when you went to Rick?
"A No.
"Q To Jim Wise [divorce attorney]?
"A No. I went to him on the 16th.
"Q So my question was do you remember receiving that letter?
"A Yes.
 "Q This letter discloses that there is a demand made on the loan and that the balance here was $221,000 and change, correct?
"A Yes.
"Q Did you know of the loan before receiving this letter?
 "A No." (Deposition of Ms. Patricia Zeppernick, pp. 9-10, and Defendant's Exhibit No. 2, appended to PNC's Summary Judgment Motion as Exhibit E)
Although Zeppernick stated that she received the demand letter on July 16, 1993, PNC argues that an affidavit from her divorce attorney "undercuts" that testimony. The affidavit, made by James R. Wise, states that he represented Zeppernick in a divorce action and that the period of his representation began approximately three days prior to the filing of the divorce complaint. (Affidavit of James R. Wise, appended to PNC's Summary Judgment Motion as Exhibit O).
It is unclear how the affidavit from Wise "undercuts" Zeppernick's deposition testimony. In the affidavit, Wise makes no mention of the PNC demand letter or when it might have been received by Zeppernick. Accordingly, PNC failed to offer evidentiary material to rebut Zeppernick's showing that no genuine issue of material fact existed on the issue of when she received the demand letter.
As for the insurance documents, they would merely have listed PNC as a mortgagee. (Affidavit of David Yerian, appended to PNC's Summary Judgment Motion as Exhibit L). In addition to failing to produce the declaration pages themselves, PNC did not produce any evidence that the declaration pages would have separately identified each interest and/or lien PNC claimed against the subject property.
Accordingly, PNC failed to establish a statute of limitations defense.
PNC's third main argument under its first assignment of error is that the trial court erred as a matter of law in rejecting PNC's res judicata defense. The doctrine of res judicata consists of two related concepts — claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel). Grava v. ParkmanTwp. (1995), 73 Ohio St.3d 379, 381. Claim preclusion holds that a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. Ft. Frye Teachers Assn., OEA/NEA v. State Emp.Relations Bd. (1998), 81 Ohio St.3d 392, 395. Issue preclusion holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different. Id.
While the merger and bar aspects of res judicata have the effect of precluding the relitigation of the same cause of action, the issue preclusion aspect prevents the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action that was based on a different cause of action. Id. Under the rule of issue preclusion, "even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit." Id. at 112.
With regard to the issue preclusion aspect of res judicata, PNC points to the bankruptcy proceedings involving Jones. The bankruptcy court found that Jones had defrauded PNC, that the 1988 loan and mortgage were valid, that the debt was not dischargeable, and that PNC had no reason to question the bonafides of the loan and mortgage documents or the signatures thereon. The magistrate rejected PNC's argument based upon a finding that Zeppernick was not a party to the bankruptcy proceedings and was not in privity with Jones. PNC argues that this was clear error, at least with respect to the undivided one-half interest which Jones transferred to Zeppernick by quit claim deed.
Zeppernick argues that the issues raised in the bankruptcy proceedings are different than those raised by her fraud claim and, therefore, were not "actually and directly litigated" in the bankruptcy proceedings. Zeppernick argues that the issue here concern's PNC's failure to comply with the mortgage execution requirements, under both Pennsylvania and Ohio law, with respect to each of the loan transactions.
Zeppernick also argues that the bankruptcy court did "pass upon" the issue of PNC's failure to comply with either Ohio or Pennsylvania execution and notary requirements and the issue of PNC's fraud in knowingly causing to be recorded defectively executed mortgages with the Mahoning County Recorder.
PNC failed to establish a res judicata defense by way of issue preclusion. PNC presented no evidence that Zeppernick was a party or in privity with a party to the bankruptcy proceedings involving Jones. Her awareness of the proceedings and her status as a witness is insufficient to make her a party to those proceedings. Furthermore, whether PNC perpetrated a fraud on Zeppernick was not actually and directly at issue nor was that issue passed upon by the bankruptcy court.
With regard to the claim preclusion aspect of res judicata, PNC argues that Zeppernick had a full and fair opportunity to litigate the issue of the validity of the 1988 mortgage when she filed her Petition to Strike in the Allegheny Court of Common Pleas.
PNC has also failed to establish a res judicata defense by way of claim preclusion. The present action commenced by Zeppernick is one to quiet title and for fraud. The Allegheny County Common Pleas Court lacked the jurisdiction to hear either of these claims.
Accordingly, PNC failed to establish a res judicata defense.
PNC's fourth main argument under its first assignment of error is that the trial court erred as a matter of law in granting Zeppernick's motion for partial summary judgment on her fraud claim.
The elements of fraud are:
 "(a) a representation or, where there is a duty to disclose, concealment of a fact,
"(b) which is material to the transaction at hand,
 "(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
"(d) with the intent of misleading another into relying upon it,
 "(e) justifiable reliance upon the representation or concealment, and
 "(f) a resulting injury proximately caused by the reliance." Burr v. Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69, paragraph two of the syllabus
PNC argues that the magistrate ignored all but two of the fraud elements, intent and damages. PNC argues that Zeppernick introduced no evidence of PNC's intent. PNC submits that the evidence showed that PNC did not intend to defraud anyone. PNC points out that at least two of the mortgages containing forged signatures were notarized by persons who were not PNC employees. PNC argues that it had no reason to question the validity of the signatures.
Zeppernick responds by arguing that there was sufficient evidence presented on all the elements of her fraud claim. Zeppernick points to the fact that she never signed any of the loan or mortgage documents and that PNC routinely notarized the documents outside the presence of the original signatories. Zeppernick argues that PNC knowingly caused to be filed defectively executed mortgages with the Mahoning County Recorder's Office. Zeppernick asserts that on each occasion, PNC made a material representation to the Mahoning County Recorder that the signatures were genuine, which PNC knew to be false. Zeppernick argues that the Mahoning County Recorder relied on PNC's representations by recording the mortgages as a lien against the subject property. As to the issue of damages, Zeppernick maintains that she has been unable to sell or otherwise alienate her interest on the subject property due to PNC's defective and unenforceable liens which continue to encumber the property.
In support of her motion for partial summary judgment, the only evidence relied upon by Zeppernick in support of her fraud claim was the deposition testimony of certain PNC employees. David C. Borland, former vice president of PNC, testified that loan documents and mortgages were routinely sent out from PNC to be signed. (Deposition of David C. Borland, p. 20). PNC employees Sandra Mullen and Kathy Rauschart Popa testified that they never met Zeppernick and notarized documents that had previously been signed. At best, this evidence demonstrates the existence or lack thereof of PNC's intent and knowledge. Zeppernick offered no evidence on the elements of representation, materiality, reliance, and injury. Therefore, Zeppernick failed to meet her initial burden under Dresher and the magistrate erred to the extent he granted summary judgment in favor of Zeppernick on her fraud claim.
Accordingly, PNC's first assignment of error is sustained in part and overruled in part.
PNC's second assignment of error is directed towards the trial court's decision to the extent that it granted First Federal's motion for summary judgment. PNC argues that it has a valid lien against Jones' undivided one-half interest in the subject property and that its lien is superior to that of First Federal's.
The basic issue presented under PNC's second assignment of error is whether the 1988 mortgage and each of the amendments thereto constitute a valid lien upon the subject property given the fact that Zeppernick's signature had been forged to those documents. Applying only Ohio law, the magistrate concluded that the mortgage from Jones to PNC was completely invalid and ineffective to operate as a conveyance of any interest. The magistrate also concluded that it was ineffective to affect Zeppernick's succession to Jones' legal and equitable title or to affect First Federal's subsequent mortgage.
PNC argues that, under Pennsylvania law, Jones' validly executed the 1988 mortgage and subsequent amendments and, therefore, should be considered as validly executed in Ohio. Zeppernick and First Federal argue that the mortgage and amendments were not validly executed, either under Ohio law or Pennsylvania law.
The requirements for execution of mortgages in Pennsylvania are as follows:
 "No deed or mortgage, or defeasible deed, in the nature of mortgages, hereafter to be made, shall be good or sufficient to convey or pass any freehold or inheritance, or to grant any estate therein for life or years, unless such deed be acknowledged or proved and recorded within six months after the date thereof, where such lands lie, as hereinbefore directed for other deeds." 21 PA C.S.A. sec. 621
R.C. 5301.06 provides:
 "All deeds, mortgages, powers of attorney, and other instruments of writing for the conveyance or encumbrance of lands, tenements, or hereditaments situated within this state, executed and acknowledged, or proved, in any other state, territory, or country in conformity with the laws of such state, territory, or country, or in conformity with the laws of this state, are as valid as if executed within this state, in conformity with sections 1337.01 to 1337.03, inclusive, and 5301.01 to 5301.04, inclusive, of the Revised Code."
R.C. 5301.01 requires, in order to be valid, a mortgage executed in Ohio must be signed by the mortgagor and acknowledged in the presence of two witnesses and a notary public.
PNC argues that the mortgage and amendments were validly executed under Pennsylvania law. PNC contends that Jones (1) brought the executed 1988 mortgage to PNC, (2) stated that he had signed it, (3) acknowledged it was his signature and asked a PNC employee to notarize the mortgage, and (4) had the mortgage notarized by a bank employee, thus satisfying the requirements of 21 PA C.S.A. sec. 621 and R.C. 5301.06.
Under Ohio law the 1988 mortgage clearly was not validly executed. The mortgage is missing the signatures of two witnesses. Upon a review of the record, it is unclear whether the 1988 mortgage and the amendments thereto were executed in Pennsylvania or Ohio. Therefore, genuine issues of material fact remain on the issue of whether PNC has a valid lien on the subject property to the extent that Zeppernick received Jones' undivided one-half interest.
Accordingly, PNC's second assignment of error is sustained.
In summary, the trial court's decision is hereby reversed to the extent that it granted Zeppernick summary judgment on her claim for fraud, granted Zeppernick summary judgment on her claim to quiet title against PNC, and granted First Federal summary judgment on the priority of its lien. The trial court's decision is hereby affirmed to the extent that it denied PNC summary judgment on its asserted defenses of statute of limitations andres judicata.
The judgment of the trial court is hereby reversed in part, affirmed in part, and this cause remanded for further proceedings according to law and consistent with this opinion.
Cox, J., dissents in part; see dissenting opinion, Vukovich, J., concurs.
 ____________________ Gene Donofrio, Judge