[Cite as *Washburn v. Gvozdanovic*, 2017-Ohio-2954.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STEPHEN J. WASHBURN, | : | APPEAL NO. C-160590 |
| | | TRIAL NO. A-1502783 |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| MARINKO GVOZDANOVIC, | : | |
| Defendant-Appellee. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 24, 2017

*The Matre Law Group, Co., LPA* and *Kerrie K. Matre*, for Plaintiff-Appellant,

*Finney Law Firm, LLC*, *Christopher P. Finney* and *Bradley M. Gibson*, for Defendant-Appellee.

**MYERS, Judge.**

{¶1} Plaintiff-appellant Stephen J. Washburn has appealed from the trial court's entry granting summary judgment to defendant-appellee Marinko Gvozdanovic on Washburn's claims for fraud, breach of contract, and a violation of R.C. 5302.30.

{¶2} Washburn has raised three assignments of error for our review. In the first two assignments of error, he challenges the trial court's entry of summary judgment on his claim for fraud. In the third assignment of error, Washburn argues that the trial court erred in striking the affidavit of his expert witness. We affirm.

### *Factual and Procedural Background*

{¶3} On October 25, 2009, Washburn and Gvozdanovic entered into a contract for Washburn to purchase the property located at 622 Fleming Road from Gvozdanovic for $92,000. The contract provided that the property was being sold "as is." Gvozdanovic had executed a "Residential Property Disclosure Form," which Washburn signed and acknowledged on the date that the contract was entered into. Section E of the disclosure form was titled "STRUCTURAL COMPONENTS," and it contained the following language: "Do you know of any movement, shifting, deterioration, material cracks/settling (other than visible minor cracks or blemishes) or other material problems with the foundation, basement/crawl space, floors, or interior/exterior walls?" In response to this question, Gvozdanovic checked a box marked yes and wrote that "there has been ground movement in the area."

{¶4} Prior to closing on the property, Washburn visited it multiple times and had several inspections conducted. Washburn had noticed a small amount of

mold on his first visit to the property, and he hired Tencon, Inc., a technical environmental consulting company, to inspect the property for water issues. On December 30, 2009, Tencon sent Washburn a report indicating that it had found visible mold growth in the basement of the home, and that "ground water appears to be entering the basement via the cement block wall through the block structure, through minor cracks and/or where the blocks join the footer and basement floor."

{¶5} On February 11, 2010, Truman P. Young & Associates conducted a structural inspection on the property. The report issued following that inspection indicated that "[t]he basement floor and first floor are noticeably tilted towards the front of the house, indicating probable settlement of the foundation." The report further stated that "[i]t is likely that moisture is penetrating the basement walls through cracks, however, the extent and severity of any cracking cannot be determined without removing the gypsum board wall finish and wood furring." The report noted that the inspection did not involve the removal of any finishes to view concealed conditions. Washburn did not remove the gypsum board prior to closing.

{¶6} Washburn closed on the property on March 19, 2010. TKS Construction Services then performed construction and remodeling work on the home. TKS invoiced Washburn for its work on May 20, 2010. Sometime prior to sending the invoice, TKS informed Washburn that it had discovered cracked foundation walls after damaged drywall had been removed during mold remediation.

{¶7} Approximately one year after taking possession of the property, Washburn noticed that his asphalted driveway had begun to crumble and heave, that horizontal cracks were forming on the front porch, and that new cracks were forming in the basement walls. Washburn hired Quentin Gorton, a geotechnical engineer, to

inspect the property. After his inspection on May 25, 2011, Gorton told Washburn that the property sat on an active landslide. He additionally informed Washburn that he had previously been hired by Gvozdanovic to inspect the property, and that he had told Gvozdanovic that the property sat on an active landslide.

{¶8} On May 22, 2015, Washburn filed suit against Gvozdanovic, asserting claims for breach of contract, fraud, and a violation of R.C. 5302.30. With respect to the fraud claim, Washburn's complaint alleged that Gvozdanovic had committed fraud by misrepresenting the condition of the property in the disclosure form and by concealing the damage caused by the landslide with new drywall and asphalt.

{¶9} The trial court issued a case management order on July 30, 2015. The order provided that Washburn's experts had to be identified in writing by December 14, 2015. The order further stated that "[e]xperts not named by the dates set forth herein shall not be permitted to testify. Expert reports shall be provided to opposing counsel within 30 days after the expert has been identified unless counsel otherwise agrees." In his responses to Gvozdanovic's interrogatories, which were served upon Gvozdanovic's counsel on December 3, 2015, Washburn named Gorton as an expert witness. Washburn's discovery responses further indicated that he had received only an oral report from Gorton. Washburn did not provide a written report by the specified deadline.

{¶10} Gvozdanovic moved for summary judgment on Washburn's claims. Along with his memorandum in opposition to Gvozdanovic's motion for summary judgment, Washburn filed both his own affidavit and an affidavit from Gorton. Attached to Gorton's affidavit was a letter from Gorton to Washburn's counsel

stating that the damage to Washburn's property had been caused by a landslide. This letter is a written report of the expert's opinions.

{¶11} Gvozdanovic filed a motion to strike Gorton's affidavit because Washburn had failed to timely provide an expert report from Gorton.

{¶12} In the same entry, the trial court granted both Gvozdanovic's motions to strike Gorton's affidavit and for summary judgment. With respect to the motion to strike, the trial court mistakenly found that Washburn had failed to identify Gorton as an expert prior to the deadline set in the case.

{¶13} The trial court provided numerous reasons in support of its grant of summary judgment. As relevant to this appeal, it found that Washburn's claim for fraud was filed outside of the applicable statute of limitations. And with respect to the merits of the claim for fraud, the trial court found that summary judgment was appropriate because Washburn failed to establish that Gvozdanovic fraudulently concealed the existence of a landslide or that he had justifiably relied on a misrepresentation made by Gvozdanovic.

{¶14} Washburn has appealed from the trial court's entry. His assignments of error challenge the trial court's grant of summary judgment on his claim for fraud and the trial court's striking of Gorton's affidavit. Washburn raises no challenge to the trial court's entry of summary judgment on his claims for breach of contract and for a violation of R.C. 5302.30.

*Fraud Claim Not Timely Filed*

{¶15} We consider Washburn's second assignment of error first, as it is dispositive of this appeal. In his second assignment of error, Washburn argues that

the trial court erred in determining that his claim for fraud was time-barred because it was filed past the applicable statute of limitations.

### 1. Standard of Review

{¶16} We review a trial court's grant of summary judgment de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriately granted when there exist no genuine issues of material fact, the party moving for summary judgment is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion that is adverse to that party. *State ex rel. Howard v. Ferreri,* 70 Ohio St.3d 587, 589, 639 N.E.2d 1189 (1994).

### 2. Discovery Rule

{¶17} An action for fraud must be brought within four years of the accrual of the action. R.C. 2305.09(C). The four-year limitations period begins to run "when the complainant has discovered, or should have discovered in the exercise of reasonable diligence, the alleged fraud." *Vanderlaan v. Pavlik*, 1st Dist. Hamilton No. C-150060, 2015-Ohio-5349, ¶ 13, citing *Investors REIT One v. Jacobs*, 46 Ohio St.3d 176, 546 N.E.2d 206 (1989), paragraph 2b of the syllabus. A person should be aware that a fraud has occurred when the facts that she or he possesses would alert a reasonable person to the possibility of fraud. *Palm Beach Co. v. Dun & Bradstreet, Inc.*, 106 Ohio App.3d 167, 171, 665 N.E.2d 718 (1st Dist.1995).

{¶18} As both this court and the Supreme Court of Ohio have explained, "[c]onstructive knowledge of facts, rather than actual knowledge of their legal significance, is enough to start the statute of limitations running under the discovery

6

rule." *Vanderlaan* at ¶ 13, quoting *Cundall v. U.S. Bank*, 122 Ohio St.3d 188, 2009-Ohio-2523, 909 N.E.2d 1244, ¶ 30.

{¶19}  Washburn's fraud claim is based on two allegations:  that Gvozdanovic misrepresented that the property sat on an active landslide by writing on the property disclosure form that "there has been ground movement in the area," and that Gvozdanovic concealed the effects of the landslide by putting new asphalt on the driveway and new drywall over the cracks in the basement.

{¶20}  Washburn argues that he first discovered the fraud on May 25, 2011, when Gorton informed him, after inspecting the property, that it sat on an active landslide and that he had previously inspected the property for Gvozdanovic and had conveyed to him the same information.  Using this date of discovery, Washburn contends that his complaint filed on May 22, 2015, was filed within the four-year limitations period.

{¶21} Gvozdanovic contends that, based on an accumulation of facts, Washburn had notice of the alleged fraud no later than May 20, 2010, the date that TKS informed Washburn of cracked foundation walls.  Using that date, Gvozdanovic argues that Washburn's complaint was filed outside of the four-year limitations period.  The trial court found that Washburn "should have been aware through the exercise of reasonable diligence, of all of the alleged defects, namely the landslide, no later than May 20, 2010."  Consequently, it held that the limitations period began to run on that date and that the cause of action for fraud was time-barred.

{¶22}  Following our review of the record, we agree with the trial court's determination.  We find that the following facts, when considered together, would have alerted a reasonable person to the possibility of fraud.

7

{¶23} On October 25, 2009, Washburn signed the "Residential Property Disclosure Form" indicating that "there has been ground movement in the area." With respect to this statement, Washburn argues that a reference to ground movement "in the area" referred to area around the property, but not the property itself. Washburn's argument is flawed. He ignores the fact that the disclosure was made in the "structural components" section of the disclosure form, and that it was provided in response to a direct question about the structural integrity of 622 Fleming Road.

{¶24} After being made aware of ground movement in the area, Washburn received the Tencon report in December of 2009 indicating that water had been entering the basement through minor cracks. Shortly thereafter, in February of 2010, Washburn received the report from Truman P. Young & Associates stating that "[t]he basement floor and first floor are noticeably tilted towards the front of the house, indicating probable settlement of the foundation." The report further informed Washburn that moisture was penetrating through cracks, but that the extent of the cracking could not be determined without removing certain finishes from the wall. Despite receiving this information, Washburn, at that time, did not remove any of the gypsum board wall finish or wood furring to determine the extent of the cracking.

{¶25} After closing on the property on March 19, 2010, Washburn was informed by TKS, no later than May 20, 2010, that TKS had found cracked foundation walls in the basement after damaged drywall had been removed.

{¶26} We find that, as of May 20, 2010, Washburn possessed facts sufficient to alert a reasonable person to the possibility of fraud. At that point, he: 1) had been

informed of ground movement in the area affecting his property (listed under the "Structural Components" section of the disclosure form); 2) had been given two reports stating that moisture was entering the basement through cracks; 3) was aware that the basement and first floor were noticeably tilted toward the front of the house; and 4) had been told of cracked foundation walls in the basement that had been previously covered by drywall. A reasonable person, in possession of these facts, would have been alerted to the possibility that Gvozdanovic's statement on the disclosure form was a potential misrepresentation and that Gvozdanovic had possibly concealed damage caused by the ground movement or landslide. *See Palm Beach Co.*, 106 Ohio App.3d at 171, 665 N.E.2d 718.

{¶27} Consequently, the limitations period for Washburn's fraud claim began to run on May 20, 2010, and his claim filed on May 22, 2015, was untimely. Because Washburn's claim was filed outside of the limitations period, we hold that the trial court did not err in granting summary judgment to Gvozdanovic. The second assignment of error is overruled.

{¶28} Our resolution of Washburn's second assignment of error has rendered his first assignment of error concerning the merits of the fraud claim and his third assignment of error, in which he challenges the trial court's striking of Gorton's affidavit, moot. The judgment of the trial court is, accordingly, affirmed.

Judgment affirmed.

**CUNNINGHAM, P.J.,** concurs.
**MILLER, J.,** dissents.

**MILLER, J.,** dissenting.

{¶29} Respectfully, I dissent. First, when the factual question of commencement is close, as in this case, the law requires a jury to decide what event triggered the statute of limitations. Second, the trial court erred in excluding Washburn's expert geotechnical engineer on the basis of nondisclosure where the expert was timely disclosed as an expert in Washburn's discovery response, was mentioned by name in Gvozdanovic's discovery requests, whose opinions were summarized in Washburn's discovery responses, and who was identified in Washburn's complaint. Finally, I would reverse the trial court's granting of summary judgment on the merits of Washburn's fraud claim, as there remain genuine issues of material fact to be resolved.

### *A Close Question on the Discovery Rule Goes to the Jury*

{¶30} Some cases simply must be tried. This is one. The question of when a party should have discovered a fraud for the purposes of commencing the running of the statute of limitations is a question of fact. *Hamilton v. Ohio Savs. Bank*, 70 Ohio St.3d 137, 140, 637 N.E.2d 887 (1994). The court below erred by not construing the facts in favor of the nonmoving party when it decided that Washburn should have discovered the fraud earlier than he did. Accordingly, summary judgment on the basis of the running of the statute of limitations should not have been granted.

{¶31} The majority recites the facts with a lawyer's eye and with perfect hindsight to conclude that an ambiguous statement that "there has been ground movement in the area," combined with knowledge of a leaky basement, a sloped basement floor, and a cracked basement wall, meant that Washburn should have discovered the alleged fraud prior to being told of the fraud by Gorton, the geo-

technical engineer. Maybe Washburn should have been more alert to signs of fraud. But this case is a close call. Close calls go to the jury.

{¶32} Construing the facts in favor of Washburn, the use of the passive voice and present perfect progressive tense in the disclosure that "there has been ground movement in the area" could be reasonably understood to mean that at some time in the recent past, minor ground movement occurred somewhere near the property. It would also be reasonable to conclude based upon Gvozdanovic's prior litigation over his sale of the adjoining property, and his testimony in that case to the effect that he would not purchase a property that he knew was the subject of an active landslide, that the disclosure was intentionally and artfully written to deceive, and thus did not provide notice of the fraud—the statement itself was the fraud.

{¶33} Further, wet basements, uneven floors, and cracked foundation walls are common in older homes. These facts do not necessarily rise to the level of constructive notice of an active landslide—and certainly are not notice that Washburn should have suspected that Gvozdanovic knew of the active landslide. Water intrudes into basements regularly. The evidence was that the walls were cracked, not shifted, bowed, or angled. There was no evidence submitted regarding the extent of cracking to indicate something significant should have been expected.

{¶34} None of the several experts Washburn hired prior to Gorton stated that an active, or for that matter, past landslide, had caused the leaky basement, sloped floors, and cracked walls. The stated cause of the uneven floor was settlement. The source of what was characterized as "moisture" in the basement was never identified. Critically, no one linked these particular issues to the landslide before Washburn spoke with Gorton. On this record, it would be reasonable to

conclude that the first indication of a landslide on the property occurred a year after closing when Washburn's driveway began to crumble and heave, and new cracks formed. It was then that Washburn hired Gorton and Gorton informed Washburn both of the existence of the active landslide and of Gvozdanovic's knowledge of the landslide. Gorton was the key to Washburn's discovery of Gvozdanovic's alleged fraudulent behavior. A reasonable jury could conclude that the statute of limitations did not commence until Washburn had spoken with Gorton. Accordingly, summary judgment on the basis that the statute of limitations had run on Washburn's fraud claim was inappropriate.

{¶35} Because I would not affirm the trial court's granting of summary judgment on the basis of the statute of limitations, I address the remaining assignments of error.

### *Gorton was Timely Disclosed as an Expert*

{¶36} The trial court excluded Gorton as an expert because "Plaintiff failed to identify Mr. Gorton as an expert at any time prior to the deadline *in this case.*" (Emphasis in original.) This was flatly wrong.

{¶37} The trial court set a case-management order requiring Washburn to disclose any expert witnesses by December 14, 2015. On December 3, 2015, Washburn specifically identified Gorton in response to Gvozdanovic's Interrogatory #3, which sought the identity of expert witnesses. The answer also described the scope of Gorton's work, "Mr. Gorton identified the existence of a rotational slip fault and scarp-line surrounding the house." In response to Interrogatory #15 requesting an identification of opinions, Washburn answered, "Mr. Gorton verbally stated that in his opinion stabilizing the structure would require the installation of 36" diameter

concrete piers extending down to bedrock at each corner of the house. He also estimated at that time that it could cost up to $150,000 to install such piers. Defendant may have a written report in his possession from this same expert obtained prior to selling the property to Plaintiff."

{¶38} As further proof that Gvozdanovic had actual knowledge of Gorton, it is necessary to look no further than Washburn's complaint in which he stated that "Plaintiff learned of the fraud perpetrated upon him by the Defendant on May 25, 2011 when he hired Quentin A. Gorton, P.E. to examine the cracking foundation walls ... and learned that this same engineer informed the Defendant of the landslide conditions a few years earlier." Also, Gvozdanovic's discovery requests sought the production of documents "sent to or received from Quentin A. Gorton, P.E., regarding the Property."

{¶39} In sum, Gvozdanovic had clear notice of Gorton being an expert witness, and that Gorton did not prepare an expert report. At that point, it became incumbent upon Gvozdanovic to pursue additional discovery of Gorton via deposition.

{¶40} Despite all of this, the trial court excluded Gorton as undisclosed. This error should be reversed. Moreover, even if Gorton's expert opinions were excludable, he would still remain a viable fact witness regarding Gvozdanovic's prior knowledge of the landslide. The trial court therefore should have, at a minimum, considered his affidavit for these facts alone.

### *There Is Sufficient Evidence of Fraud to Withstand Summary Judgment*

{¶41} Construed most favorably to Washburn, there are sufficient indicia of fraud for the claim to survive summary judgment. *See Burr v. Cty Comms. of Stark*

*Cty.*, 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986), syllabus (setting forth the elements of fraud).

{¶42} There is evidence that Gvozdanovic was aware of the active landslide, both through the prior litigation regarding Gvozdanovic's sale of the adjoining property and from Gorton's affidavit that Gorton had told Gvozdanovic about the landslide on the property.

{¶43} Gvozdanovic completed a standardized, state mandated, "Residential Property Disclosure Form." That form's instructions require a seller to "Identify any material matters in the property that are actually known." It was on this form under the "Structural Components" disclosure that Gvozdanovic checked a box indicating that he was aware of "movement, shifting, deterioration, material cracks/settling ... or other material problems with the foundation, basement/crawl space, floors or interior/exterior walls." The form then reads, "If 'Yes', please describe:" Here, Gvozdanovic wrote "There has been ground movement in the area." Arguably, this statement was nonresponsive to the question and was evasive. Gvozdanovic did not disclose any movement of the foundation, floors, or walls in his response. There was no relation of the ground movement in the area to the structure.

{¶44} Gvozdanovic circled the word "No" in answer to the question whether there was any current settling, grading or erosion issues affecting the property, despite allegedly being aware of the landslide. Gvozdanovic left blank the space where he was to identify "any repairs, modifications, or alterations to the property" in response to "drainage, settling, grading or erosion problems since owning the property" despite the fact that he recently resurfaced the driveway to repair cracks allegedly caused by the landslide.

{¶45} Gvozdanovic also left blank the catchall section that required him to disclose "other known material defects in or on the property" where "material defects" was defined as including "any non-observable physical condition existing on the property that could be dangerous to anyone occupying the property or any non-observable physical condition that could inhibit a person's use of the property."

{¶46} Despite having several prompts to disclose the landslide on the property, Gvozdanovic could be found by a reasonable jury not to have done so. Gvozdanovic certified that "Owner represents that the statements contained in this form are made in good faith based on his/her actual knowledge as of the date signed by the Owner." A jury could reasonably conclude that Gvozdanovic fraudulently violated this provision.

{¶47} The acts of drywalling over the cracked foundation walls and resurfacing the driveway could reasonably be construed as acts done to hide damage allegedly caused by the landslide. A jury could reasonably find that these acts hid a latent defect and lulled Washburn into a false state of comfort regarding the status of the property.

{¶48} Accordingly, there was evidence of actionable fraud that, if believed, could result in a jury verdict in Washburn's favor. Summary judgment on the merits of the fraud claim was therefore inappropriate.

### *Conclusion*

{¶49} The trial court erred in finding the fraud claim barred by the statute of limitations when a jury could have reasonably concluded that Washburn did not have cause to discover the alleged misrepresentation until alerted to it by Gorton. The court also improperly excluded Washburn's expert witness as undisclosed.

Finally, the trial court should have allowed Washburn's fraud claim to proceed on the merits, as there were genuine issues of material fact left to be resolved.

**{¶50}** For these reasons, I would reverse the trial court's judgment, and remand the cause for further proceedings.

Please note:

The court has recorded its own entry on the date of the release of this opinion.