**PALM BEACH COMPANY, Appellant,**

**v.**

**DUN & BRADSTREET, INC., Appellee.**

[Cite as *Palm Beach Co. v. Dun & Bradstreet, Inc.* (1995), 106 Ohio App.3d 167.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–940298.

Decided Aug. 30, 1995.

168

Michael R. Schmidt, for appellant.

Taft, Stettinius & Hollister and W. Stuart Dornette, for appellee.

Per Curiam.

The plaintiff-appellant, Palm Beach Company, brings this appeal from the order of the trial court granting summary judgment to the defendant-appellee, Dun & Bradstreet, Inc., in an action which centered on allegations that Dun & Bradstreet had deliberately deceived Palm Beach into purchasing more of its services than it needed. Palm Beach asserts three assignments of error, each challenging the propriety of the trial court's grant of summary judgment. For the reasons that follow, we find none of the assignments of error to have merit, and thus affirm. We have *sua sponte* removed this case from the accelerated calendar.

## I

From 1979 through 1982 Palm Beach entered into written contracts with Dun & Bradstreet to obtain access to the latter's credit-information services. The

services were packaged in such a way that Palm Beach made an advance purchase for the entire year of a predetermined amount of credit reports and other credit information at a discounted price. According to Palm Beach, a complex fee structure made it almost impossible for it to monitor its own usage of such services, and therefore it was obliged to rely upon a Dun & Bradstreet salesman not only to track Palm Beach's usage, but also to predict the company's usage for the next year as well. Palm Beach contends that instead of performing this task in good faith, Dun & Bradstreet engaged in a pattern of "omissions, misinformation, and misrepresentation" to falsely induce the company to purchase substantially more units than it needed.

In January 1989, Palm Beach requested from Dun & Bradstreet a usage report for the years 1979 through 1988. That information was sent by Dun & Bradstreet to Palm Beach on January 27, 1989. Palm Beach asserts that the usage report was indecipherable and that it was required to employ the services of Al Carl, a former Dun & Bradstreet manager, to make sense of it. On July 7, 1989, Carl gave Palm Beach his report, in which he concluded that Palm Beach had purchased more units that it had used for the years 1979 through 1982. On October 18, 1989, Carl sent a letter to Palm Beach incorporating the numbers from his July report.

Palm Beach waited until October 1, 1993, to file the present action—more than four years after Carl's July 7, 1989, report. The trial court found the company's delay in filing suit dispositive. In its order granting summary judgment, the trial court concluded that the four-year statute of limitations had run on Palm Beach's claim of fraud based on its determination that Palm Beach should have discovered any fraud after it received the usage reports in January 1989. Moreover, the trial court found that Palm Beach's breach-of-contract claim, since it did not allege any specific breach of a contract's express terms, was, in essence, a claim that Dun & Bradstreet had breached an implied covenant of good faith. Reasoning that such a theory in Ohio could not form the basis of an independent cause of action, the trial court concluded that the contract claim was, in fact, the fraud claim under a different analytical guise and was therefore similarly barred by the four-year statute of limitations for fraud. Finally, the trial court held that Palm Beach's unjust-enrichment claim was barred by the six-year statute of limitations, which began to run in 1982, the year of the last contract by which Dun & Bradstreet was allegedly unjustly enriched.

## II

As noted, Palm Beach has asserted as error the trial court's conclusion that all three of its claims—fraud, unjust enrichment, and contract—were time-barred by the appropriate statutes of limitation.

Although Palm Beach has chosen to argue its contract claim first, Dun & Bradstreet remonstrates that this order of presentation is a deliberate attempt to "disguise the fact that each of the three claims rests upon the allegations of fraud," which were, in fact, set forth in the first cause of action in the company's complaint. Although we do not necessarily concur in Dun & Bradstreet's characterization of Palm Beach's motives for arguing its contract claim first, we do agree that the company's allegations sound in fraud and that logically, for the purposes of our analysis, the fraud claim should be discussed first.

■ According to Palm Beach, the trial court erred in determining that the four-year statute of limitations for fraud ran from the date that Palm Beach received the usage report from Dun & Bradstreet, *i.e.*, January 1989, as opposed to the date upon which, having received the report, it was able to decipher the report with the aid of an expert and discover that it had been the victim of an alleged fraud. As noted, Palm Beach received Carl's report in July 1989. Since even by use of this date the company would still not have filed its suit within the four-year limitations period, Palm Beach is necessarily forced to argue that the operative date should be October 18, 1989, the date upon which Carl sent Palm Beach a letter further explaining his findings.

■ Neither Palm Beach nor Dun & Bradstreet disputes that a cause of action for fraud accrues when the fraud is, or should have been, discovered. See *Shover v. Cordis Corp.* (1991), 61 Ohio St.3d 213, 574 N.E.2d 457. Absent actual awareness, the standard to determine when a person should be aware of the fraud is when he or she possesses "facts sufficient to alert a reasonable person to the possibility of wrongdoing." *NASA Tool Mfg. Corp. v. Cincinnati Milacron Inc.* (Aug. 31, 1987), Clermont App. No. CA86-07-044, unreported, 1987 WL 16301. It is noteworthy that this standard does not require the victim of the alleged fraud to possess concrete and detailed knowledge, down to the exact penny of damages, of the alleged fraud; rather, the standard requires only facts sufficient to alert a reasonable person of the possibility of fraud.

The question, then, is whether, following receipt of either the January 1989 usage report or the July 1989 decoding report, Palm Beach possessed such knowledge as to satisfy the above test, or, as Palm Beach argues, whether the October 1989 follow-up letter by Carl conveyed to the company information substantially different from that which it had previously obtained. The answer to this question is not difficult since in his July 1989 report Carl made several references to potential fraud and wrongdoing by Dun & Bradstreet. These references were far from obtuse and were not buried in the text. In fact, it would be difficult for a reasonable person to read Carl's July 1989 report and *not* come away alerted to the possibility of fraud, given Carl's explicit and straightfor-

ward conclusions on the matter. For example, after discussing peculiarities in Palm Beach's usage charts, Carl made the following statements:

"On the usage charts, units were carried forward which were dictated by Dun and Bradstreet policy. During the inspection of usage (1–80 thru 7–84) there was no evidence of any of these adjustments ever being made. If Dun and Bradstreet's corporate policy was followed these adjustments should have been listed in the usage reports. Due to the absence of these adjustments, I have concluded that Palm Beach never received credit for its carryover and, furthermore, it was probably unaware that these units existed.

"It is my opinion that the entire unused units issue was caused by Palm Beach not being properly informed of usage figures. If Palm Beach made attempts at securing usage figures in order to make decisions, but was told written figures did not exist, or was lied to or misled, it is my opinion that Palm Beach deserves a refund of those misspent funds lost due to this misconduct. The total estimate dollar impact is $464,382.12.

"The second area of concern for Palm Beach is the possible unwarranted charges for services. In some instances I feel Palm Beach was unfairly charged for services.   * * *"

Conversely, there is nothing substantial revealed for the first time in Carl's October 18, 1989 letter that would cause the epiphany to which Palm Beach lays claim. In other words, by comparing the text of the July report with the October letter, we discern nothing in the latter which substantially adds to the former, particularly with respect to evidence of fraud. Hence, we conclude that Palm Beach was in possession of essentially the same facts in July 1989 as it was in October 1989, and therefore there is no basis for delaying the running of the statute of limitations until the company was in receipt of the October letter.

Moreover, we disagree with Palm Beach that its mere assertion that it could not understand Dun & Bradstreet's usage report and Carl's decoding report until the explanatory letter in October creates a question of fact sufficient to withstand summary judgment. This argument overlooks the objective aspect of the discovery rule. The question is not necessarily when Palm Beach understood, but when it should have understood. The issue is further narrowed in this case to whether the October letter conveys any additional information which would permit one to conclude reasonably that Palm Beach was given information qualitatively different from that which it had before. These are issues which do not involve the weighing of conflicting evidence, but, rather, a comparative textual and legal analysis of the earlier reports and the October letter. Cf. *Hater v. Gradison* (1995), 101 Ohio App.3d 99, 655 N.E.2d 189 (trial court properly granted summary judgment on the basis of the two-year statute of limitations contained in R.C. 1707.43 because letter notifying investors of limited partnership's intention

to proceed without units fully subscribed was sufficient, in law, to give each investor "reason to know" of facts underlying complaint of securities fraud).

We hold, therefore, that the trial court did not err by determining that Palm Beach's fraud claim was barred by the four-year limitations period since, at the latest, that period commenced to run in July 1989, and the present lawsuit was not filed until October 1993. Palm Beach's third assignment of error is, therefore, overruled.

## III

With respect to the company's breach-of-contract claim, Palm Beach argues that the trial court applied an overly restrictive view of the "notice" pleading requirements by interpreting the allegation in its complaint that Dun & Bradstreet "breached the contract by, *inter alia*, acting in bad faith" as nothing more than a claim of a breach of an implied covenant of good faith. According to the company, its use of the Latin *"inter alia"* should have been sufficient to give Dun & Bradstreet fair notice that it was also alleging specific breaches of the express terms of the contracts.

Initially, we reject the suggestion that a two-word Latin phrase for "among other things," even under the most liberal of pleading requirements, should be readily accepted as tantamount to a claim of breach of a specific contract term. As Dun & Bradstreet correctly points out, nowhere in the complaint can there be found any identification by Palm Beach of what express provisions of the contracts were allegedly breached. In its memorandum opposing Dun & Bradstreet's motion for summary judgment, Palm Beach attempted to characterize Dun & Bradstreet's allegedly incorrect charges as a breach of the pricing schedule contained in the series of subscription agreements. However, even in making this argument, Palm Beach resorted to advocating what it called "an implied covenant of accuracy in charges," while admitting that such a covenant was "not specifically covered by any single term of the contract." Noteworthy also is the fact that, in arguing under its third assignment of error for the validity of its unjust-enrichment claim, Palm Beach goes to great lengths to explain that its allegations of inaccurate billing, accounting, and receipt of overcharges carried on beneath a deliberately complex usage-information system create issues which "were not expressly covered by the contract" and arise " 'outside the parameters of the express contract.' " Palm Beach Brief at 12 (quoting *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* [1989], 46 Ohio St.3d 51, 55, 544 N.E.2d 920, 924).

In determining the proper statute of limitations to apply, we take it as well settled that courts are obliged to look to the underlying nature of the cause

rather than to rely simply on its form in the complaint. *Hunter v. Shenango Furnace Co.* (1988), 38 Ohio St.3d 235, 237, 527 N.E.2d 871, 873. As this court noted in *Hibbett v. Cincinnati* (1982), 4 Ohio App.3d 128, 131, 4 OBR 220, 223–224, 446 N.E.2d 832, 836:

"In Ohio the applicable statute of limitations is determined not from the form of pleading or procedure, but from the gist of the complaint. *Andrianos v. Community Traction Co.* (1951), 155 Ohio St. 47 [44 O.O. 72, 97 N.E.2d 549] (a claim of personal injuries caused by a common carrier must be brought within two years, even though the form of the action was in contract); *Cox v. Cartwright* (1953), 96 Ohio App. 245 [54 O.O. 281, 121 N.E.2d 673] (an action against a dentist for damages caused by improper fitting of false teeth is one for malpractice and is governed by the statute of limitations applicable to malpractice, not the statute of limitations applicable to contracts)."

■ We affirm the trial court's conclusion that the company's contract claim amounted only to an alleged breach of an implied covenant of good faith. This being so, we find no error in the trial court's conclusion that Palm Beach's contract claim was, in reality, its fraud claim in different guise and subject to the same limitations period. Palm Beach's first assignment of error is, therefore, overruled.

## IV

■ In its second assignment of error, Palm Beach asserts that the trial court erred when it concluded that the six-year limitations period for its claim of unjust enrichment commenced at the end of 1982, the last subscription year in which Dun & Bradstreet allegedly overcharged Palm Beach. According to Palm Beach, given the fact that unjust enrichment is an equitable remedy, this court should either hold that the cause of action accrued at the time Dun & Bradstreet refused to return the money or else adopt a discovery rule similar to that discussed previously with respect to the company's fraud claim.

■ Initially, we reject the argument advanced by Dun & Bradstreet that the presence of an express contract in the present case precludes the extracontractual remedy of unjust enrichment upon the principle that there "cannot be an express agreement and an implied contract for the same thing at the same time." Dun & Bradstreet Brief at 12 (quoting *Hughes v. Oberholtzer* [1954], 162 Ohio St. 330, 55 O.O. 199, 123 N.E.2d 393). Having successfully argued that Palm Beach's allegations of wrongdoing do not constitute a breach-of-contract claim but sound in fraud, Dun & Bradstreet cannot now logically and consistently suggest that Palm Beach can recover only on the contract.

In fact, as Palm Beach argues, the unjust enrichment alleged by the company arises "outside the parameters of the express contract," see *Aultmann, supra,* 46 Ohio St.3d at 55, 544 N.E.2d at 924, and is premised upon fraud and bad faith arising from a pattern of activity which has little to do with the contract terms and more to do with Dun & Bradstreet's pricing scheme, billing, and accounting practices. To suggest that, if Palm Beach's allegations are true, nothing more has happened than one party receiving what the other party agreed to give under the contract greatly oversimplifies the allegations of wrongdoing in this case. In this regard, Palm Beach is correct in noting that the law of *Ullmann v. May* (1947), 147 Ohio St. 468, 34 O.O. 384, 72 N.E.2d 63, paragraph four of the syllabus, that an express contract precludes extracontractual relief, is qualified by the proviso that there must be an absence of fraud or bad faith.

This being so, however, the issue of the accrual date of the cause of action remains. Although Palm Beach invites us to create a discovery rule for unjust-enrichment claims analogous to that for fraud claims, the discussion in *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 180–182, 546 N.E.2d 206, 211, concerning the appropriateness of creating such a rule in the absence of legislative action counsels against accepting the invitation.

Moreover, even if we accept for argument's sake the proposition that it is properly the role of this court to adopt such rules absent legislative action, the traditional rule in Ohio appears to be that a cause of action for unjust enrichment accrues on the date that money is retained under circumstances where it would be unjust to do so. See *Chaplain Kieffer Post 1081 v. Wayne Cty. Veterans Assn.* (Sept. 21, 1988), Wayne App. No. 2358, unreported, 1988 WL 99188. Although in certain cases the unlawfulness of the retention may not arise until there is a request for a return of the money, in the instant case, if Palm Beach's allegations are true, it was the *receipt* of the money that was unlawful, and therefore the cause of action accrued at the latest, as the trial court determined, in 1982 when the last of the alleged overcharges, or false billings or accountings, occurred.

We conclude, therefore, that the trial court did not err by holding that Palm Beach's unjust-enrichment claim was also barred by the statute of limitations. Hence, Palm Beach's second assignment of error is overruled.

Based on all of the above, the judgment of the trial court is affirmed.

*Judgment affirmed.*

GORMAN, P.J., HILDEBRANDT and SHANNON, JJ., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.