[Cite as *Bank of Am., N.A. v. Darkadakis*, 2016-Ohio-7694.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| BANK OF AMERICA,, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING LP, fka COUNTRYWIDE HOME LOANS SERVICE, LP, | ) ) ) ) ) | CASE NO. 14 MA 0076 |
| | ) | OPINION |
| PLAINTIFF-APPELLEE, | ) ) | |
| V. | ) ) | |
| WILLIAM DARKADAKIS, et al., | ) ) | |
| DEFENDANTS-APPELLANT. | ) ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common Pleas of Mahoning County, Ohio Case No. 12CV01962

JUDGMENT:     Reversed and Remanded

APPEARANCES:
For Plaintiff-Appellee     Atty. William Joseph Baker
1300 East Ninth St., Suite 1600
Cleveland, Ohio 44114

Atty. Sherrie Mikhail Mlday
P.O. Box 165028
Columbus, Ohio 43216

For Defendants-Appellants     Atty. Edwin Romero
Atty. Thomas F. Hull II
201 E. Commerce St.
Atrium Level Two, Commerce Building
Youngstown, Ohio 44503

JUDGES:
Hon. Gene Donofrio
Hon. Carol Ann Robb
Hon. Stephen A. Yarbrough, Sitting by Assignment.

Dated: November 1, 2016

DONOFRIO, P.J.

{¶1} Defendant-appellant, William Darkadakis, appeals from a Mahoning County Common Pleas Court judgment granting a decree in foreclosure for plaintiff-appellee, Bank of America, N.A., Successor by merger to BAC Home Loans Servicing LP, fka Countrywide Home Loans Servicing LP (the Bank).

{¶2} On June 25, 2012, the Bank initiated a foreclosure action against William and Elizabeth Darkadakis for the property located at 10450 New Buffalo Road, Canfield Ohio. On September 4, 2004, Elizabeth signed a note with the Bank's predecessor for $207,000.00. As collateral for that note, Elizabeth signed a mortgage to the property. Her initials and William's initials were on the mortgage but William did not sign the signatory page of the mortgage.

{¶3} At the time Elizabeth signed the mortgage and note, the property was in William's name only. In an affidavit attached to the Bank's motion for summary judgment, Elizabeth claimed that throughout their marriage ownership of the property was constantly transferred between her, William, and other third parties. But nothing in her affidavit indicated that at the time she signed the note and mortgage she was listed as an owner of the property. William, in his affidavit, disputed Elizabeth's claims that the property was continually transferred and asserted the property was never deeded in Elizabeth's name. The appraisal in July 2004, prior to the execution of the note and mortgage, stated William was the owner of the property. It did not list Elizabeth as the owner.

{¶4} During the foreclosure proceedings William and Elizabeth divorced. Their February 14, 2013 divorce decree stated that the parties agreed the real estate would remain solely in William's name.

{¶5} As the foreclosure action proceeded, the Bank filed for summary judgment and sought reformation of the mortgage. The Bank claimed it was a mutual mistake that William did not sign the note and mortgage. It also asserted William would be unjustly enriched if he were able to retain the property. Elizabeth's affidavit was attached to this motion. In her affidavit she stated it was a mistake that William did not sign the mortgage.

{¶6} William filed a motion in opposition. He claimed reformation and unjust enrichment were new claims. He asserted the Bank had no standing because he did not sign the note or mortgage. He argued unjust enrichment was barred by the statute of limitations, there was no mutual mistake, and parol evidence could not be used to support reformation.

{¶7} The Bank filed a reply focusing on the facts that William initialed every page of the mortgage and the mortgage was used to pay off a pervious note and mortgage for which William was liable.

{¶8} On June 11, 2014, the trial court granted summary judgment for the Bank and held it was entitled to a judgment and decree in foreclosure. The court found it was the intent of the parties for the mortgage to encumber the entire property, and thus, reformation was appropriate. It held reformation was not precluded by parol evidence or the statute of frauds. It also found the unjust enrichment claim was not barred by the statute of limitations and William would be unjustly enriched if the mortgage did not encumber the entire property. Lastly, it stated the Bank had standing to seek foreclosure because the uncontradicted evidence established it was a holder of the note and mortgage at the time the complaint was filed.

{¶9} William filed an appeal from that decision with this court. We found the judgment was not a final appealable order because it did not enter a monetary amount on the award of summary judgment and did not resolve the issue of liens. We granted a 60-day limited remand for William to obtain a final appealable order from the trial court.

{¶10} Upon remand the parties filed additional motions. William filed a motion for summary judgment on February 5, 2015. The arguments raised in this motion were the same arguments raised in his motion in opposition to summary judgment. The Bank filed a motion in opposition and a motion to strike on February 23, 2015.

{¶11} On April 21, 2015, the trial court struck William's motion for summary judgment finding the matter was remanded from the court of appeals for the limited

purpose of issuing a final appeal order on the remaining issues. It stated the only remaining issue was the default of Elizabeth on the promissory note and mortgage.

{¶12} That same day the trial court issued the judgment entry and decree in foreclosure. Thereafter, William amended his notice of appeal to include this judgment.

{¶13} William now raises six assignments of error. His first assignment of error states:

THE TRIAL COURT ERRED IN AWARDING SUMMARY JUDGMENT TO THE BANK.

{¶14} An appellate court reviews the granting of summary judgment de novo. *Comer v. Risko,* 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper.

{¶15} A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. *Mercer v. Halmbacher,* 9th Dist., 2015-Ohio-4167, 44 N.E.3d 1011, ¶ 8; Civ.R. 56(C). The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt,* 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts to show that there is a genuine issue of material fact. *Id.;* Civ.R. 56(E). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.,* 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993).

{¶16} In this assignment of error, William raises seven separate arguments asserting summary judgment was improper. We will address each argument

separately.

## 1.  Statute of Frauds

**{¶17}** It is undisputed Elizabeth was listed on the mortgage as the borrower and she initialed every page of the mortgage.  William was not listed on the mortgage, although he initialed every page of the mortgage.  Elizabeth solely signed the mortgage.  Additionally, Elizabeth is the sole borrower on the note and she, not William, signed the note.

**{¶18}** The deeds indicate William was solely listed on the deed when Elizabeth signed this mortgage and note.  Furthermore, nothing in Elizabeth's affidavit stated that at the time she signed the mortgage she was listed on the deed.

**{¶19}** Given these facts, William asserts Elizabeth did not have the right to mortgage his property and thus, the Bank is not permitted to foreclose on his interest in the property.  He asserts any mortgage interest is barred by the statute of frauds.  According to him, the trial court incorrectly determined the statute of frauds did not apply.

**{¶20}** The statute of frauds states, "No action shall be brought * * * upon a contract or sale of lands * * * or interest in or concerning them * * * unless the agreement upon which such action is brought * * * is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."  R.C. 1335.05.

**{¶21}** The Ohio Supreme Court has held that a mortgage is a conveyance to which the statute of frauds applies. *FirstMerit Bank, N.A. v. Inks*, 138 Ohio St.3d 384, 2014-Ohio-789, 7 N.E.3d 1150, quoting *Webb's Admr. v. Roff*, 9 Ohio St. 430 (1859), paragraph one of the syllabus.

**{¶22}** The Bank agrees that typically a mortgage falls within the statute of frauds.  But it contends that in this case there was a mutual mistake that removed the case from the statute of frauds.

**{¶23}** Courts have held that a mutual mistake does remove a case from the statute of frauds. *Holt v. Martino*, 3d Dist. No. 14-97-43, 1998 WL 126247, (Mar. 19,

1998) (statute of frauds requires the transaction be in writing; however, where both parties to a contract agree the terms within the contract do not actually evince their true intentions, then a mutual mistake could be one explanation for the discrepancy.); *Phoenix Concrete, Inc. v. Res.-Creekway, Inc.*, 100 Ohio App.3d 397, 405, 654 N.E.2d 155 (10th Dist.1995) ("[T]he Statute of Frauds does not preclude reformation of a written agreement which as a result of a mutual mistake fails to reflect the intent of the parties."); *Davenport v. Sovil's Heirs*, 6 Ohio St. 459, 464 (1856) ("mutual mistake of the parties to a contract concerning lands will take the case out of the statute of frauds, as that a part performance will do so").

{¶24} In *Davenport*, one party claimed the description in the mortgage did not embrace the land intended to be mortgaged. The mistake was claimed to be mutual. The question before the court was whether the contract could be reformed on the basis of mutual mistake. The Court determined that it could:

> It is admitted everywhere that a defendant in equity may allege, and prove by parol, a mistake in a contract sought to be enforced against him; and we are unable to perceive any good reason why a distinction should be made between a plaintiff and defendant in cases of this kind. That it is difficult or impossible to reconcile this doctrine with the letter of the statute for the prevention of frauds and perjuries, may be admitted; but it would be quite as difficult to reconcile with that statute the unquestioned doctrine that a parol contract for the sale of lands, when partly performed, is not within its operation. In both cases we proceed on the ground, that to allow the statute to operate would be to give success and effect to the very evil the statute was designed to prevent. And, so far as a uniform course of judicial determination can settle anything, it would seem to be as well settled, at least in Ohio, that mutual mistake of the parties to a contract concerning lands will take the case out of the statute of frauds, as that a part performance will do

so.

*Id.* at 463-464.

**{¶25}** The mistake in *Davenport* not only occurred in the mortgage, but also happened when the property was sold to another party. The Court held the decree of sale was not an obstacle to reforming the mortgage. *Id.* at 465-466.

**{¶26}** *Davenport* demonstrates the statute of frauds does not bar reformation when there is a mutual mistake in a mortgage. William correctly points out the mistake in *Davenport* did not concern who signed the mortgage, but instead concerned the description of the real property.

**{¶27}** The question then becomes does that distinction mean the general rule, that a mortgage can be reformed if there is a mutual mistake, no longer applies. This court holds the general rule applies; the issue is proving mutual mistake in order to take the contract outside the statute of frauds. Mutual mistake is similar to the issue of part performance. Part performance removes an oral contract concerning real property from the operation of the statute of frauds. *Martin v. Jones*, 4th Dist. No. 14CA992, 2015-Ohio-3168, ¶ 47. Even though there is no official signature in an oral contract, the party can prove there was a contract. The same applies in this case.

**{¶28}** It is possible that the Bank could prove William intended to sign the mortgage since his initials appear on each page of the mortgage. In that case, mutual mistake would apply taking the contract outside of the statute of frauds. But it is likewise possible that William could prove he did not intend to sign the mortgage because, in fact, he did not sign it. In that case, there would be no mutual mistake and the statute of frauds would bar reformation.

**{¶29}** Thus, it is possible that mutual mistake can be used to reform the mortgage and the statue of frauds will not apply. But, as will be discussed in detail below, a genuine issue of material fact exists as to whether William mistakenly failed to sign the mortgage or whether he intentionally did not sign it.

2. New Claims

**{¶30}** William argues the trial court should not have considered the Bank's claims for unjust enrichment and reformation because it did not raise those claims in the complaint. He asserts the Bank raised these claims for the first time in its motion for summary judgment. William asserts he was not put on notice of these claims and never had a chance to file an answer or to conduct discovery regarding these claims. William further argues the complaint did not state any claim against him.

**{¶31}** In the complaint, William was named as a defendant. The complaint was clearly a foreclosure complaint. The second count of the complaint indicated "defendants," which included William, "have or claim to have an interest in the premises." The next paragraph alleged the mortgage with the Bank was the first lien on the premises and the Bank was entitled to foreclose on the property because all conditions precedent had been performed. Therefore, the Bank made a claim against William in the complaint.

**{¶32}** That being said, William is correct that the words "unjust enrichment" and "reformation" do not appear in the complaint. The words "mutual mistake" also do not appear in the complaint. Therefore, we must determine whether the complaint was required to notify William that the Bank alleged mutual mistake and sought reformation, and if so, whether the complaint complied with that requirement.

**{¶33}** Ohio is a notice-pleading state. *York v. Ohio State Highway Patrol*, 60 Ohio St.3d 143, 144, 573 N.E.2d 1063 (1991). Civ.R. 8(A) requires only that a complaint "contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." Civ.R. 8(E) further directs averments contained in a pleading be simple, concise, and direct. "Ohio law does not ordinarily require a plaintiff to plead operative facts with particularity." *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, ¶ 29.

**{¶34}** Other appellate districts have found that as long as the complaint sets forth the proper allegations upon which there is a right to reformation, that remedy may be granted. For instance, the Ninth District has concluded reformation is

implicitly pleaded when reformation of the contract is the only means the trial court has to grant the relief requested. *Elmar Co. v. Bernacchia*, 9th Dist. No. 91CA005153, 1992 WL 82656, (Apr. 22, 1992). As long as the pleadings set forth sufficient operative facts to give the other party fair notice of the nature of the action, the "plaintiff is not required to explicitly state 'reformation' within its complaint before the trial court may grant such relief." *Id.* Likewise, the Eleventh District has found that as long as the complaint sets forth the proper allegations upon which there is a right to reformation, the court may grant reformation. *Allstate Ins. Co. v. Zampedro*, 11th Dist. No. 3247, 1983 WL 6040, (Dec. 30, 1983).

{¶35} Here, the complaint indicated the Bank was seeking foreclosure. It was clear from the complaint and the attachments that only Elizabeth signed the note and mortgage and she was listed as the sole borrower. As mentioned above, the Bank alleged in the complaint that William had an interest in the property. If William was the only party listed on the deed, then unjust enrichment and reformation would be the only means to obtain foreclosure. Thus, under these facts, the Bank implicitly raised claims for unjust enrichment and reformation.

{¶36} Moreover, when the Bank filed its motion for summary judgment, the only means by which it would be entitled to foreclose on the property was under a claim of unjust enrichment and by having the mortgage reformed. Through the summary judgment motion, William had notice of these claims. The Bank points out William could have moved pursuant to Civ.R. 56(F) for additional time to conduct discovery on these newly raised issues. *Van Wert v. Akron Metro. Regional Transit Auth.*, 5th Dist. No. 2014CA00201, 2015-Ohio-3243, ¶ 21 (Civ.R. 56(F) provides the remedy for a party who seeks a continuance on a motion for summary judgment in order to conduct discovery relevant to the motion.). This was an option for him which he did not pursue.

{¶37} In conclusion, the complaint was sufficient to put William on notice of the unjust enrichment and reformation claims. As to the summary judgment motion, William had the opportunity to defend the claims. We find no error with the trial court

considering these issues.

### 3. Standing

**{¶38}** William claims the Bank lacks standing to bring the foreclosure action for two reasons. First, the Bank did not have any interest in the mortgage in 2004 when the mortgage was executed. Its interest was not acquired until it was assigned the loan in 2012. Second, William claims the Bank does not possess a valid mortgage on the premises.

**{¶39}** Recently, the Ohio Supreme Court explained standing as "'[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.'" *Wells Fargo Bank, N.A. v. Horn*, 142 Ohio St.3d 416, 2015-Ohio-1484, 31 N.E.3d 637, ¶ 8, quoting Black's Law Dictionary 1625 (10th Ed.2014). A party lacks standing to invoke a court's jurisdiction unless the party has some real interest in the subject matter of the action. *Id.*, citing *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas*, 35 Ohio St.2d 176, 179, 298 N.E.2d 515 (1973).

**{¶40}** In order for the Bank to have standing here to bring its foreclosure action, it must have had an interest in the note or mortgage at the time it filed suit. *Federal Home Loan Mortg. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 28. The note and mortgage attached to the complaint established it had an interest. Thus, the Bank had standing to bring the foreclosure action.

### 4. Statute of Limitations

**{¶41}** William argues the claim for unjust enrichment is barred by the statute of limitations. R.C. 2305.07 provides a six-year statute of limitations for a claim of unjust enrichment. Williams asserts the statute of limitations began to run on September 4, 2004, when the mortgage from Countrywide Home Loans Servicing (the Bank's predecessor) was used to pay off Elizabeth and William's previous mortgage on the premises. The Bank asserts the statute of limitations did not begin to run until 2012, when William "asserted an adverse interest in the Property by means of his position in this litigation."

{¶42} The general rule in Ohio is "a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed." *Collins v. Sotka*, 81 Ohio St.3d 506, 507, 692 N.E.2d 581 (1998). There is an exception to this general rule known as the discovery rule. The discovery rule provides that "a cause of action accrues when the plaintiff discovers, or in the exercise of reasonable care should have discovered, that he or she was injured by the wrongful conduct of the defendant." *Id.* The discovery rule, however, has not been extended to unjust enrichment claims. *Marok v. Ohio State Univ.*, 10th Dist. No. 13AP-12, 2014-Ohio-1184, ¶ 25; *Palm Beach Co. v. Dun & Bradstreet, Inc.*, 106 Ohio App.3d 167, 665 N.E.2d 718 (1st Dist.1995).

{¶43} That said, in *Palm Beach Co.*, it was explained, "a cause of action for unjust enrichment accrues on the date that money is retained under circumstances where it would be unjust to do so." *Palm Beach Co.* at 175. In that case, the defendant allegedly deceived the plaintiff into buying more of its services than the plaintiff needed. *Id.* at 169-170. In holding that the claim was barred by the statute of limitations, the court explained:

> Although in certain cases the unlawfulness of the retention may not arise until there is a request for a return of the money, in the instant case, if Palm Beach's allegations are true, it was the receipt of the money that was unlawful, and therefore the cause of action accrued at the latest, as the trial court determined, in 1982 when the last of the alleged overcharges, or false billings or accountings, occurred.

*Id.* at 175.

{¶44} Appellate courts have applied the *Palm Beach* reasoning to varying degrees. The Eighth Appellate District reviewed the language of *Palm Beach* and held the unjust enrichment claim, given the facts before them, was barred. *Pomeroy v. Schwartz*, 8th Dist. No. 99638, 2013-Ohio-4920, ¶ 43-47. In *Pomeroy*, an insurance agency brought an action against a commercial client to recover funds

advanced to pay non-covered "trail funds." The trial court determined the last payment, September 2003, of the "trail claims" triggered the statute of limitations, not April 2006, when there was a demand for reimbursement of the "trail funds." *Id.* at 45. It explained:

> Appellees' failure to reimburse appellants, if unjust under the circumstances as appellants allege, was unjust from the beginning; when appellants decided to demand the return of the allegedly wrongfully retained benefit is not a significant event for purposes of the statute of limitations. To conclude otherwise would allow a plaintiff to unilaterally control the statutory time.

*Id.* at ¶ 46.

{¶45} The Ninth Appellate District has also reviewed the *Palm Beach* decision. *Desai v. Franklin*, 177 Ohio App.3d 679, 690-93, 2008-Ohio-3957, 895 N.E.2d 875 (9th Dist.), ¶ 17-23. In *Desai*, Desai and Franklin entered into an employment agreement whereby Desai would join Franklin's professional corporation. *Id.* at ¶ 2. The agreement indicated Desai's compensation would be computed as a percentage of the operating net income. *Id.* The agreement also provided Desai would be entitled to 45% of the accounts receivable for any termination occurring after July 1, 1981. *Id.* Desai resigned September 1, 2000. Following his resignation, questions arose as to whether or not Franklin had comported with the terms of the employment agreement. Desai filed suit two years later and asserted, among other claims, a claim for unjust enrichment. The case proceeded to a jury trial. The jury determined Franklin had engaged in unjust enrichment from 1987 until Desai's departure in 2000 and awarded Desai $301,597.34 in damages for the unjust enrichment claim. *Id.* at ¶ 8.

{¶46} On appeal, Franklin argued that under the theory of unjust enrichment Desai was entitled to recover only for the injuries he received on the date of the filing of his complaint, January 22, 2002, and the six years preceding that date. *Id.* at ¶ 13.

**{¶47}** The appellate court disagreed. *Id*. at ¶ 23. It discussed the *Palm Beach* holding and stated the First District focused on the last date the benefit was received and conferred. *Id*. at ¶ 17. The Ninth Appellate District then explained Palm Beach Co.'s unjust-enrichment claim failed because it had stopped conferring any benefit upon Dun & Bradstreet in 1982, 11 years before it filed its claim. *Id*. at ¶ 19. It then stated its previous decision regarding when an unjust enrichment claim accrues comports with the *Palm Beach* decision:

Previously, this court held that an unjust-enrichment claim did not begin to accrue until the point at which the defendant's retention became unjust. *See Chaplain Kieffer Post 1081 v. Wayne Cty. Veterans Assn.* (Sept. 21, 1988), 9th Dist. No. 2358, 1988 WL 99188. In *Chaplain Kieffer Post 1081*, a Veterans of Foreign Wars Post ("post") placed some of its assets in a trust account under the name of the Wayne County Veterans Association ("association"). The assets were always to be for the benefit of the post. In 1980, the association became a separate organization, but continued to hold the post's assets. In 1985, new officers of the post asked the association about the assets, but the association claimed that it was entitled to them and that the statute of limitations barred the post from bringing suit to reclaim them. This court held that the post's unjust-enrichment claim did not accrue until 1985, when the association informed the post that it planned to keep the assets instead of holding them for the post's benefit. *Chaplain Kieffer Post 1081* at *3. Thus, even though the association had possession of the post's assets prior to 1985, the unjust-enrichment claim did not accrue until the association announced its intent to keep the assets for its own benefit. That announcement made the retention of the post's benefit unlawful and gave rise to the unjust-enrichment claim. *Id*. This holding comports with *Palm Beach Co.*'s holding that an unjust-

enrichment claim accrues, at the latest, when the last unjust retention of the benefit occurs. See *Palm Beach Co.*, 106 Ohio App.3d at 175, 665 N.E.2d 718.

*Id.* at ¶ 20.

**{¶48}** The *Desai* decision, based on the *Palm Beach* decision, concluded a claim does not accrue until the last point in time the plaintiff conferred and a defendant unjustly received a benefit. *Id.* at ¶ 22. In *Desai* the court determined that since Desai stopped working for Diagnostic Imaging in 2000, that was when he effectively stopped being a benefit to Franklin. Thus, the 2002 claim was not barred by the statute of limitations and furthermore, damages could extend back until 1987 since the jury found Franklin was unjustly enriched from 1987 until 2000.

**{¶49}** In this case, there are three potential accrual dates. The first one is the date of the mortgage signed by Elizabeth, September 4, 2004. William insists that is the correct accrual date. The proceeds of the September 4, 2004 mortgage were used to pay off a previous mortgage signed by William and Elizabeth. He insists that is the only date the benefit was conferred and retained.

**{¶50}** This reasoning, however, fails to acknowledge payments made on the September 4, 2004 note secured by the mortgage. It may be unjust to hold the accrual date as September 4, 2004, because it would allow William to unilaterally control the statutory time. *See Pomeroy*, 2013-Ohio-4920 at ¶ 46. William could ensure the mortgage was paid for six years and then stop payment but retain the benefit of having his previous mortgage paid off and getting to keep his house free and clear of debt.

**{¶51}** The above analysis demonstrates the second potential date of the accrual – date of default or failure to pay on the note. The benefit was being conferred and retained as long as payments on the note were made. Conference and retention of the benefit would not cease until Elizabeth was in default on the note. Thus, the cause of action may not accrue until payments were no longer made

on the note. The trial court found the note went into default in February 2012.

**{¶52}** The third potential accrual date is the date the foreclosure action was filed. The Bank asserts this is when the statute of limitations began to run because this is when William asserted his claim that the Bank could not foreclose on his interest in the property.

**{¶53}** Considering all potential accrual dates, we agree with the Bank's position. The statute of limitations did not begin to run until the claim was filed in 2012. Therefore, since the unjust enrichment claim did not accrue until 2012, the claim is not barred by the statute of limitations.

### 5. Parol Evidence Rule

**{¶54}** William argues the parol evidence rule prevents the Bank from using Elizabeth's affidavit to add additional terms to the mortgage, specifically, to use her testimony to assert it was the intention of the Bank, William, and Elizabeth that William was to sign the mortgage. The Bank asserts parol evidence may be introduced to show a mistake where the written contract fails to express the actual agreement. It contends the Supreme Court has allowed parol evidence to be introduced to support reformation of a mortgage.

**{¶55}** Elizabeth's affidavit was attached to the Bank's summary judgment motion. In her affidavit she averred the loan was taken with William's full knowledge and consent. (Elizabeth Aff. ¶ 8). She further avowed at the time the mortgage was executed, both she and William intended the mortgage would encumber the entire interest in the property and it was a mistake when William did not sign the mortgage. (Elizabeth Aff. ¶ 10). She also stated she and William signed the Bank's HUD Settlement Statement at closing. (Elizabeth Aff. ¶ 12).

**{¶56}** The parol evidence rule provides that when parties intend a writing to be a final embodiment of their agreement, it cannot be modified by evidence of earlier or contemporaneous agreements that might add to, vary, or contradict the writing. *Bellman v. Am. Internatl. Group*, 113 Ohio St.3d 323, 2007-Ohio-2071, 865 N.E.2d 853, ¶ 7, citing Black's Law Dictionary (8th Ed.2004) 1149. The parol evidence rule

is meant to prevent a party from introducing extrinsic evidence of negotiations that took place before or while the agreement was being reduced to writing. *Id.*, citing Black's Law Dictionary at 1149. Furthermore, the rule assumes the writing reflects the parties' minds at a point of maximum resolution. *Id.*, citing Black's Law Dictionary at 1150. Therefore, the rule provides that duties and restrictions that do not appear in the writing were not intended by the parties to survive. *Id.*, citing Black's Law Dictionary at 1150.

**{¶57}** A court can only go behind the face of an unambiguous contract where there is mutual mistake, circumventing the parol evidence rule, so long as the court is persuaded by the clearest kind of evidence that a mistake has been made by both parties. *D.F.D., Inc. v. Frick*, 2d Dist. No. 10769, 1988 WL 59394, (June 2, 1988), citing 13 Williston on Contracts 213, Section 1552, (1972).

**{¶58}** Here, there is a claim of mutual mistake. Therefore, if the Bank can show mutual mistake then the parol evidence rule will not bar outside evidence of the parties' intentions. But if mutual mistake does not exist, the parol evidence rule will bar any evidence outside of the contract itself.

### 6. Reformation Unprecedented

**{¶59}** William argues that there is no evidence of mutual mistake between the Bank and him.

**{¶60}** A person seeking reformation of a written instrument must prove by clear and convincing evidence that the mistake regarding the instrument was mutual. *Amsbary v. Brumfield*, 177 Ohio App.3d 121, 128, 2008-Ohio-3183, 894 N.E.2d 71, ¶13 (4th Dist.), quoting *Patton v. Ditmyer*, 4th Dist. Nos. 05CA12, 05CA21, and 05CA22, 2006-Ohio-7107, ¶ 28. Clear and convincing evidence is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 18, quoting *Cross v.*

*Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**{¶61}** The record before us discloses a portion of the Bank's mortgage was used to pay off a 2003 mortgage to which both Elizabeth and William were obligated. The other portion of that 2003 mortgage was paid off with a loan for $36,500.00 from Fifth Third Bank, which was executed the same day the Bank's mortgage was executed. The Fifth Third loan mortgaged the property, listed the borrowers as Elizabeth and William, and was signed by Elizabeth and William. Attached to William's motion in opposition to summary judgment was a document from the Bank's predecessor that lists the conditions of the loan to Elizabeth as of September 1, 2004. One condition was payoffs must be paid at closing. Another condition was the loan for $36,500 from Fifth Third must close. Another condition was "Spouse to sign TIL, RTC & MTG." That document is dated three days prior to the execution of the loan. The first two conditions were met.[1] The spouse's signature condition was not met.

**{¶62}** In his affidavit, William averred that he never consented to the loan and mortgage. (William Aff. ¶ 4). William further averred that it was not by his mistake that he did not sign the mortgage. (William Aff. ¶ 5).

**{¶63}** Generally, self-serving affidavits, without corroboration, are not sufficient to demonstrate material issues of fact. *Bangor v. Amato*, 7th Dist. No. 14 CO 9, 2014-Ohio-5503, ¶ 32. But in this case, William's affidavit is corroborated by the evidence that not only did he not sign the mortgage, he also did not sign the HUD Settlement Statement. (Elizabeth Aff. Ex. C). Only Elizabeth's signature is present on the HUD Settlement Statement despite her averment in her affidavit that she and William both signed the HUD Settlement Statement at the closing of the loan. (Elizabeth Aff. ¶ 12). The facts that not only did William not sign the mortgage but also he did not sign the HUD Settlement Statement, when construed together and in the light most favorable to William create a genuine issue of material fact as to

---

[1] This document does not meet the requirements of Civ.R. 56 to qualify as proper summary judgment evidence. However, no one objects to it.

whether the lack of William's signature on the mortgage was intentional on William's part or was simply a mistake.

**{¶64}** Moreover, the fact that William initialed pages of the mortgage documents suggest only that he read these pages. Nothing in the mortgage indicates that by initialling the pages the party is agreeing to the terms of the mortgage. This statement is reserved for the signatory page at the end of the mortgage, which states, "BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument an in any Rider executed by Borrower and recorded with it." (Elizabeth Aff. Ex. B). And on the notary page at the end of the mortgage, the notary public stated that the document was acknowledged before him by Elizabeth. (Elizabeth Aff. Ex. B). The notary public does not mention William at all. (Elizabeth Aff. Ex. B).

**{¶65}** Based on the above, a genuine issue of material fact exists as to whether William's missing signature on the mortgage was accidental or intentional. This genuine issue of material fact precludes summary judgment.

### 7. Material Issues of Fact

**{¶66}** William asserts the only evidence for or against summary judgment are his and Elizabeth's affidavits. As stated above, Elizabeth's affidavit indicated it was a mistake that William did not sign the mortgage. (Elizabeth Aff. ¶ 10). William's affidavit indicated it was not a mistake that he did not sign the mortgage. (William Aff. ¶ 5).

**{¶67}** William contends the statements in Elizabeth's affidavit are unreliable, and therefore, lack credibility. He states, at the minimum, the contradictory affidavits create a genuine issue of material fact.

**{¶68}** William is correct that Elizabeth's affidavit does contain an inconsistency with the document attached to the affidavit. As set forth above, Elizabeth avowed in the affidavit William signed the HUD Settlement Statement at closing. (Elizabeth Aff. ¶ 12). The HUD Settlement Statement was attached to the summary judgment motion and does not contain William's signature.

{¶69} The Bank asserts, despite the fact William states it was not his intent to sign the mortgage, there are not any genuine issues of material fact. It states the intent of Elizabeth and the Bank was the only relevant intent to determine if William was to sign the mortgage. That may be true if Elizabeth or the Bank were attempting to have the contract deemed void. However, the Bank is attempting to reform the document to encumber William's interest in the property. It wants to have him bound by the contract. Therefore, his intent is relevant. If he never intended to be a party to the contract, he cannot be made to be a party to the contract. In simple terms, if two parties to a contract intended a third party to be a party to the contract, but the third party had no intent to be a party to the contract, the two parties cannot reform the contract to include the third party. Therefore, the Bank's assertion that William's intent is irrelevant lacks merit.

{¶70} As stated above, there is conflicting evidence as to whether a mutual mistake exists in this case. On July 29, 2003, William and Elizabeth borrowed $229,500 from Accredited Home Lenders. That loan was secured by a mortgage to the property located at 10450 New Buffalo Road, Canfield, Ohio. The mortgage was signed by both William and Elizabeth. Almost one year later, Elizabeth borrowed approximately $207,000 from the Bank and Elizabeth and William borrowed approximately $36,000 from Fifth Third Bank. Those two loans were used to pay off the Accredited Home Lenders loan. The Bank's loan and the Fifth Third loan closed on the same day. William signed the mortgage with Fifth Third Bank. Significantly, however, William did not sign the mortgage with the Bank. Not only did he not sign the mortgage, he also did not sign the HUD Settlement Statement. Moreover, the notary public stated on the notary page at the end of the mortgage that the mortgage was acknowledged before him by Elizabeth. The notary makes no mention of William acknowledging the mortgage.

{¶71} Considering all of the evidence in the light most favorable to William, the non-moving party, we conclude a genuine issue of material fact exists as to whether William's missing signature on the mortgage was accidental or intentional.

Thus, the trial court erred in granting summary judgment.

**{¶72}** Accordingly, William's first assignment of error has merit and is sustained because the trial court erroneously granted summary judgment.

**{¶73}** William's second assignment of error states:

THE TRIAL COURT ERRED IN STRIKING DARKADAKIS' MOTION FOR SUMMARY JUDGMENT.

**{¶74}** The trial court granted summary judgment to the Bank on June 11, 2014. That order was not a final appealable order because it did not include a final decree of foreclosure. Thus, we remanded the matter so the trial court could issue a final appealable order. William filed his motion for summary judgment on February 5, 2015. The trial court struck the motion on April 21, 2015. A final decree of foreclosure was issued the same day.

**{¶75}** William asserts the trial court abused its discretion in striking his motion without considering it. He asserts the motion was timely filed, a statute of limitations defense on reformation arose in the interim, the filing of the motion did not exceed our limited remand, and the Bank was not prejudiced.

**{¶76}** An appellate court will not overturn a trial court's decision to grant a motion to strike absent an abuse of discretion. *Embry v. Bur. of Workers' Comp.*, 10th Dist. No. 04AP-1374, 2005-Ohio-7021, ¶ 12. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶77}** Following our December 15, 2014 order remanding the case for the parties to obtain a final appealable order, the magistrate issued an order on January 6, 2015. William's first argument is that the magistrate's January 6, 2015 order permitted the parties to file any pleadings in this case. According to the Bank, the magistrate's order directed the parties to file pleadings to "prosecute the case." It claims the motion for summary judgment was not filed to prosecute the case, but

rather was seeking to re-argue issues already decided by the trial court.

**{¶78}** The Bank's assessment of the issue is correct. The trial court had already granted summary judgment to the Bank on its reformation and unjust enrichment claims. William's motion for summary judgment re-raised arguments already asserted in his motion in opposition to the Bank's motion for summary judgment. The only new argument was a statute of limitations argument concerning the reformation claim, which will be discussed below. Thus, William's motion was not being used to prosecute the case.

**{¶79}** William's second argument is the ten-year statute of limitation period for the reformation claim expired on September 1, 2014, while the appeal was pending. According to William, the summary judgment motion was necessary to assert this new defense.

**{¶80}** "R.C. 2305.14 provides that actions not specifically limited in any provision of the Code must be brought within ten years after the cause accrued. A cause of action for reformation of a written instrument based upon mistake accrues upon the execution of the instrument." *Bonham v. Hamilton*, 12th Dist. No. CA2006-02-030, 2007-Ohio-349, ¶ 31. The Bank filed its claim for reformation prior to September 4, 2014. Thus, the statute of limitations had not expired. The claim does not have to be resolved within the statute of limitations period, rather it must be filed within the statute of limitations. R.C. 2305.14 ("An action for relief * * * shall be brought within ten years after the cause thereof accrued."). Therefore, William's argument on this point fails.

**{¶81}** Next, William argues his motion for summary judgment did not exceed our limited remand.

**{¶82}** When we remanded the matter on December 15, 2014, our judgment entry discussed what is required for a foreclosure decree to be final. We stated, "the trial court did not enter a monetary award on the award of summary judgment, nor did it resolve the issue of liens." We also explained that there are two appealable judgments in foreclosure actions - the order of foreclosure and sale, and the

confirmation of sale. In this case, no decree of foreclosure was issued when the trial court granted summary judgment to the Bank. Thus, we issued a "limited remand" for 60 days to permit William to obtain a final appealable order.

**{¶83}** In the June 4, 2015 judgment entry concerning the Bank's argument that we should not address the trial court's decision to strike William's motion for summary judgment we stated:

> On December 15, 2014 this Court issued a limited remand to allow the trial court to enter final judgment regarding the foreclosure proceedings, as no decree in foreclosure had yet been issued. The limited remand was for a very specific purpose. In short, there did not exist a final appealable order at the time the Notice of Appeal was filed.

**{¶84}** We made it clear that the remand was a *limited* remand. We were not remanding to permit William to file his own summary judgment motion. William had the opportunity to file a summary judgment motion if he wanted at an earlier time. But he did not. The trial court was correct in determining our remand was limited. The trial court did not abuse its discretion when it struck William's motion for summary judgment.

**{¶85}** William's last argument is the Bank was not prejudiced by his motion for summary judgment. Lack of prejudice to a party does not mean the trial court abused its discretion in striking the motion. As stated above, our remand was a limited remand for the trial court to issue a final appealable order, specifically a foreclosure decree.

**{¶86}** Accordingly, William's second assignment of error is without merit and is overruled.

**{¶87}** William's third assignment of error states:

> THE TRIAL COURT ERRED IN NOT GRANTING DARKADAKIS' MOTION FOR SUMMARY JUDGMENT.

{¶88} William argues the trial court erred in not granting his motion for summary judgment. But the trial court struck his summary judgment motion. We have already found the trial court did not abuse its discretion in striking William's summary judgment motion.

{¶89} Therefore, William's third assignment of error is without merit and is overruled.

{¶90} William's fourth assignment of error states:

{¶91} THE TRIAL COURT ERRED IN OVERRULING DARKADAKIS' MOTION TO DISMISS.

{¶92} As stated above, William argues the complaint was insufficient and failed to state a claim against him. He contends the trial court erred when it failed to grant his motion to dismiss the complaint for failure to state a claim.

{¶93} The Bank asserts William did not file a motion to dismiss. Therefore, the trial court did not err in failing to grant a nonexistent motion.

{¶94} Technically, the Bank is correct. William did not file a separate motion to dismiss. However, in his motion in opposition to the Bank's motion for summary judgment, he stated:

> Bank has raised unjust enrichment but failed to plead same in its complaint. William's answer would have asserted an affirmative. [sic] This unjust enrichment claim at his [sic] late date constitute a failure to state a claim upon which relief may be granted pursuant to Civ.R. 12(B)(6). * * *
>
> As the Bank's motion for summary judgment is the first presentation of the mutual mistake and unjust enrichment claims and this memorandum in opposition is the first opportunity to raise such defense, it is believed that these defenses under Civ.R. 12 are timely being raised and ought to be considered by the court before it determines the appropriateness of the motion for summary judgment.

Wherefore, Defendant William Darkadakis, pursuant to facts in dispute and defenses now raised to new claims being made, respectfully requests that the Bank's motion for summary judgment be denied and, if necessary that the Bank's complaint be amended to include well-pleaded claims and the joinder of a necessary party.

**{¶95}** What is notably missing is a request to dismiss the complaint for failure to state a claim.

**{¶96}** Therefore, William's fourth assignment of error is without merit and is overruled.

**{¶97}** William's fifth assignment of error states:

THE TRIAL COURT ERRED IN ORDERING THE FORECLOSURE ON DARKADAKIS' HOME.

**{¶98}** Because we have already determined that the trial court erred in granting summary judgment in this case, the trial court's order of foreclosure will be reversed.

**{¶99}** Accordingly, William's fifth assignment of error is moot.

**{¶100}** William's sixth assignment of error states:

THE TRIAL COURT ERRED IN DENYING DARKADAKIS' MOTION TO SUPPLEMENT THE RECORD WITH THE BANK'S PROPOSED FINDINGS OF FACT AND CONCLUSION OF LAW.

**{¶101}** While the appeal was pending, William filed a motion with this court to supplement the record. We held the magistrate and trial court were in a superior position to determine if the record should be supplemented. The trial court denied the motion.

**{¶102}** We have already determined that the trial court erred in granting summary judgment in this case.

**{¶103}** Accordingly, William's sixth assignment of error is moot.

**{¶104}** For the reasons stated above, the trial court's judgment is hereby reversed. The matter is remanded to the trial court for further proceedings pursuant to law and consistent with this opinion.

Robb, J., dissents with attached dissenting opinion.

Yarbrough, J., concurs.

Robb, J., dissenting opinion.

**{¶105}** I respectfully dissent from the decision reached by my colleagues. In reversing the trial court's grant of summary judgment for the Bank, the majority holds, "a genuine issue of material fact exists as to whether William mistakenly failed to sign the mortgage or whether he intentionally did not sign it." Opinion ¶ 29. I disagree with this holding and would affirm the trial court's grant of summary judgment for the Bank.

**{¶106}** The majority's holding suggests if William intentionally did not sign the loan then reformation would not be available. I find fault with that suggestion. If William intended to encumber his property, but intentionally did not sign the document in an attempt to take advantage of the situation, then mistake still could be found and reformation could still be available. When a unilateral mistake occurs "'due to a drafting error by one party and the other party knew of the error and took advantage of it, the trial court may reform the contract. * * * Reformation is appropriate if one party believes a contract correctly integrates the agreement and the other party is aware that it does not, even though the mistake was not mutual.'" *425 Beecher, L.L.C. v. Unizan Bank, Natl. Assn.,* 186 Ohio App.3d 214, 2010-Ohio-412, 927 N.E.2d 46, ¶ 44 (10th Dist.), quoting *Galehouse Constr. Co., Inc. v. Winkler,* 128 Ohio App.3d 300, 303, 714 N.E.2d 954 (9th Dist.1998).

**{¶107}** Consequently, I believe the issue before this court is not whether there is a genuine issue of material fact as to whether William mistakenly failed to sign the document or whether he intentionally failed to sign it. Rather, the issue is whether there is a genuine issue of material fact as to whether there was a mutual mistake in

the execution of the mortgage. Specifically, is there a genuine issue of material fact as to whether William intended to encumber the property?

{¶108} Civ.R. 56 provides summary judgment shall be granted if "there is no genuine issue as to any material fact" and the moving party is "entitled to judgment as a matter of law." Civ.R. 56(C). That said, the rule further provides:

A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

Civ.R. 56(C).

{¶109} Given the facts of this case, in my opinion, there is no genuine issue of material fact because the only reasonable conclusion the jury could reach is that William intended to encumber the property.

{¶110} The United States Supreme Court has explained:

If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict— "whether there is [evidence] upon which a jury can properly proceed to

find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Munson, supra,* 14 Wall., at 448.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986).

**{¶111}** Here, the undisputed facts are William and Elizabeth, a married couple, borrowed $229,500 from Accredited Home Lenders on July 29, 2003, which was secured by a mortgage on the property located at 10450 New Buffalo Road, Canfield, Ohio. Both William and Elizabeth signed the mortgage. That loan was paid off one year later by two loans; Elizabeth borrowed approximately $207,000 from the Bank, and Elizabeth and William borrowed approximately $36,000 from Fifth Third Bank. Those two loans closed on September 2, 2004 with William present at both closings.[2] William signed the mortgage with Fifth Third Bank; however, he only initialed the mortgage with the Bank. From 2004 until the note went into default in February 2012, payments were made. During that time William and Elizabeth were married and resided in the residence located at 10450 New Buffalo Road, Canfield, Ohio.

**{¶112}** William's initials on the bottom of every page, except the signature page of the Bank's mortgage, are a confirmation he read the document. When that confirmation is taken together with the facts that the loan was used to pay off his 2003 mortgage with Accredited Home Lenders and payments were made on the mortgage, a reasonable person could only conclude that William knew his property was to be encumbered and intended to encumber his property. There is no evidence William protested the mortgage with the Bank; instead, he used the loan to pay off his obligation to Accredited Home Lenders. Given those facts, a reasonable trier of fact could only conclude it was a mistake when William failed to sign the mortgage and reformation is available.

**{¶113}** To conclude otherwise unjustly enriches William. I agree with the

---

[2]Despite assertions at oral argument that William was not present at the closing of the Bank's mortgage, the record does not support such a position. Elizabeth averred in her affidavit that William was present at the mortgage closing. William's affidavit does not deny that averment or state he was not present at the mortgage closing.

majority's conclusion that unjust enrichment was properly pled. The elements of unjust enrichment are "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment')." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984). There are no disputes as to these elements. William's loan with Accredited Home Lenders was paid off. William knew the loan was paid off and he knew of the loan with the Bank. It is unjust for William to retain the benefit of having his loan paid off but not pay the Bank. In essence, if he does not have to pay the Bank, then he will receive a house for free.

{¶114} For those reasons, even when viewing the evidence in a light most favorable to William, a reasonable trier of fact could only conclude that it was William's intent to encumber the property. Any conclusion to the contrary is unreasonable and would result in William being unjustly enriched; he would receive the house free and clear of the mortgage even though the note undisputedly paid off William's previous mortgage on the property. Thus, I would affirm the trial court's grant of summary judgment for the Bank.